NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1052
_____

UNITED STATES OF AMERICA

v.

TIMOTHY S. PATTERSON,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 08-cr-00383)
District Judge:  Honorable Christopher C. Conner
_____

Submitted Under Third Circuit LAR 34.1(a)
December 14, 2010

Before:  RENDELL, JORDAN, and HARDIMAN, *Circuit Judges*.

(Filed: December 16, 2010)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Timothy S. Patterson appeals the District Court's denial of his motion to suppress

evidence.  We will affirm.

I

Because we write for the parties, we recount only the essential facts. We accept the facts as found by the District Court *in toto* because we find none of them "clearly erroneous."

In May 2006, while in state prison on felony drug charges, Patterson was sentenced for different felonies committed while he was on parole in 2005. The Dauphin County Court of Common Pleas sentenced Patterson to thirty-six months intermediate punishment with eleven and a half months in a Dauphin County work release center to be served after his release from state prison. In April 2008, Patterson was released to the custody of the County with conditions of supervision that included electronic monitoring and consent to random searches of his person, property, and residence. He was also prohibited from "possess[ing], us[ing], or hav[ing] available to [his] control . . . any contraband such as: stolen property, drugs and drug paraphernalia, [or] firearms" or "possessing or having available to [his] control . . . [o]ver $50.00 cash without a receipt." App. at 50, 55.

Within months of his release, Patterson removed his electronic monitoring bracelet, and a warrant was issued for his arrest. On October 15, 2008, Probation Officers Tom Walton and Justin Anderson went to the Presidential Apartments in Swatara Township where they located a gray Cadillac matching the description of a vehicle allegedly used by Patterson. After surveilling the car for approximately thirty minutes

2

without observing anything of interest, Walton and Anderson left the scene. They returned several hours later to continue their surveillance, and after approximately forty-five minutes, they observed a man they believed to be Patterson approach the car. The man placed a small child in the car, entered the vehicle, and started the engine. Once the man was inside the car, the officers approached, visually confirmed that he was Patterson, and ordered him to turn off and exit the vehicle.

Patterson complied with the order to remove the keys from the ignition, but he then took hold of the child and refused to exit the car. Walton opened the driver's side door, grabbed Patterson's arm, and removed him from the vehicle. Anderson took control of the child, and Walton handcuffed Patterson. A search of Patterson's person revealed that he was in possession of a small quantity of marijuana and $480 in cash.

While the officers were in the process of arresting Patterson, two women approached and Patterson repeatedly instructed them to get in the car and drive away. The women did not comply, and the car remained in the parking lot with the driver's side door open. Anderson then informed Walton that he could see a firearm in the driver's side door compartment. Walton had not yet noticed the firearm, but upon looking at the door saw that "it was very visible." App. at 75, 124.

Walton placed Patterson in the back of the officers' vehicle, and Anderson called the Swatara Township police, who arrived several minutes later and secured the firearm. Walton then attempted to get Patterson's consent to a search of the vehicle, but Patterson

3

refused.  Nevertheless, Walton still "believe[d] that there could possibly be other criminal activity parole violations within the vehicle and [he] began to search the immediate area of the driver's seat."  App. at 77.  The search turned up a bag of crack cocaine in the car's center console.

Although the officers' search was conducted for the purpose of finding evidence that Patterson had violated terms of his supervised release, it yielded evidence sufficient for a grand jury to indict Patterson on new federal charges of possession of cocaine base with intent to distribute, 21 U.S.C. § 841(a)(1), possession of a firearm in furtherance of drug trafficking, 18 U.S.C. § 924(c), and possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1).  Patterson moved to suppress the evidence seized from the vehicle, claiming that the firearm was not in plain view and that the officers' decision to wait until Patterson was in the car before arresting him was a pretext for searching the car incident to arrest.  The District Court denied his motion, finding that under Supreme Court precedent, including *New York v. Belton*, 453 U.S. 454 (1981), the officers' safety concerns justified their seizure of the firearm and search of the entire car.  The District Court also rejected Patterson's "pretext" argument, citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996), for the proposition that "an officer's subjective motivation is incapable of invalidating behavior that is objectively justifiable."  App. at 128.

After a two-day jury trial, Patterson was convicted of possession with intent to distribute cocaine base, possession of a firearm in furtherance of drug trafficking, and

4

possession of a firearm by a felon. He was sentenced to 280 months in prison. This appeal followed.[1]

## II

Patterson contends that the District Court erred in denying his motion to suppress the evidence seized by Officers Walton and Anderson because their search violated his Fourth Amendment rights under the Supreme Court's recent decision in *Arizona v. Gant*, 129 S. Ct. 1710 (2009), which limited the circumstances under which automobile searches incident to arrest are permissible under *Belton*.[2]

"This Court reviews the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercises plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002) (citing *United States v. Riddick*, 156 F.3d 505, 509 (3d Cir. 1998)). "[W]hen a party asks us to affirm a district court's suppression ruling[,] . . . we may

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291, which grants "courts of appeals . . . jurisdiction of appeals from all final decisions of the district courts of the United States."

[2] Although the officers' search of Patterson's car and the District Court's denial of Patterson's motion to suppress both predate *Gant*, Patterson may still appeal based on *Gant*'s holding because "a decision of [the Supreme] Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered." *United States v. Johnson*, 457 U.S. 537, 562 (1982); *see also United States v. Shakir*, 626 F.3d 315 (3d Cir. 2010) (analyzing, in light of *Gant*, a search and district court suppression determination from 2007 and 2008). Patterson was found guilty more than two months after *Gant* was decided.

affirm for any reason supported by the record." *United States v. Dupree*, 617 F.3d 724, 728 n.2 (3d Cir. 2010).

A

We first address the officers' "plain view" seizure of the gun found in the driver's side door of the Cadillac. The Supreme Court stated in *Horton v. California*:

> It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view; its incriminating character must also be 'immediately apparent.' . . . Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself.

496 U.S. 128, 136-37 (1990) (citations omitted); *see also United States v. Yamba*, 506 F.3d 251, 256 (3d Cir. 2007) ("As the Supreme Court has said, precedent has 'come to reflect the rule that if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately.'" (quoting *Texas v. Brown*, 460 U.S. 730, 739 (1983) (plurality opinion))).

All of the requirements of the plain view doctrine are met in this case. First, the officers had a warrant for Patterson's arrest, so they were authorized to remove him from the vehicle. Second, Walton testified that the firearm was "very visible" and the District Court found it was "readily accessible in the driver's side door compartment." App. at 127. Moreover, the "incriminating character" of the firearm was "immediately apparent"

6

because, as an individual on supervised release, Patterson's possession of a weapon constituted an automatic violation of the terms of his release.[3]  Finally, the officers had a "lawful right of access" to the firearm because it was in an open car, visible, and accessible to anyone in the public area outside of the Presidential Apartments.[4]

B

We now turn to the warrantless search of the vehicle.  According to *Gant*, law enforcement officials may conduct a warrantless search of a vehicle incident to arrest only (1) "when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle" or (2) "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search."  129 S. Ct. at 1719.

---

[3] The officers had information that Patterson used the gray Cadillac regularly, and they observed him sit in the car for fifteen to twenty seconds.  It was therefore reasonable for them to conclude that, even if the car did not technically belong to Patterson, he had constructive possession of it and its visible contents.  *See United States v. Cunningham*, 517 F.3d 175, 178 (3d Cir. 2008) ("Constructive possession exists if an individual knowingly has both the power and the intention at a given time to exercise dominion or control over a thing.").

[4] Patterson argues that the officers waited until he entered the vehicle before arresting him as a pretext to search the vehicle.  The District Court correctly declined to analyze the officers' subjective intent because, as the Supreme Court held in *Whren*, "[n]ot only have we never held, outside the context of inventory search or administrative inspection . . . that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary."  517 U.S. at 812; *see also Horton*, 496 U.S. at 130 (holding that the plain view doctrine can apply even when officers intentionally find evidence rather than come upon it inadvertently).  Moreover, the District Court found as a matter of fact that the officers had a legitimate reason for waiting: they wanted to make sure that the man under observation entered the vehicle they had identified as one used by Patterson.  App. at 129 n.6.

The offense for which Patterson was arrested in this case was his violation of the conditions of his supervised release. Upon searching Patterson's person, the officers found proof of two additional violations: possession of contraband (*i.e.*, marijuana) and possession of more than $50.00 in cash. The subsequent "plain view" seizure of the firearm confirmed another contraband violation, the evidence of which was located inside the vehicle. During the arrest, Patterson instructed bystanders to drive his car away, providing additional circumstantial evidence that the car contained contraband. Taken together, these factors gave the officers ample reason to believe that the car contained evidence that Patterson violated his conditions of release. Accordingly, the District Court did not err in rejecting Patterson's *Gant* argument.

III

For the foregoing reasons, we will affirm the District Court's denial of Patterson's motion to suppress evidence.