PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3059

UNITED STATES OF AMERICA

vs.

STEPHEN MIKNEVICH,

Appellant.
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania

(D.C. No. 3-08-cr-00185-001)
District Judge:   The Honorable William J. Nealon
_____

ARGUED MAY 19, 2010

BEFORE: FUENTES, HARDIMAN,
and NYGAARD, <u>Circuit</u> <u>Judges</u>.

(Filed: March 1, 2011)

_____

Nicholas F. Kravitz, Esq. (Argued)
Patrick A. Casey, Esq.
Myers Brier & Kelly
425 Spruce Street, Suite 200
Scranton, PA 18503
      Counsel for Appellant


Francis P. Sempa, Esq. (Argued)
Office of the United States Attorney
235 North Washington Avenue, Suite 311
P. O. Box 309
Scranton, PA 18503
      Counsel for Appellee

_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge.


I.


      We are asked to determine whether an affidavit prepared by a law enforcement officer provided a substantial basis for a Pennsylvania district justice's finding of probable cause to issue a search warrant. Appellant Stephen Miknevich was arrested and charged with possession of child

2

pornography. These charges arose after police executed a search warrant at his home and seized his computer. His computer was later found to contain numerous images of child pornography. After the search and seizure of the computer, Miknevich gave oral and written admissions of guilt to the arresting officers.

Miknevich then filed a motion to suppress in the District Court, arguing that the warrant was issued without probable cause. The District Court denied the motion, finding that the accompanying affidavit contained an adequate description of child pornography so as to support a probable cause determination and, even had it not, the *Leon* good faith exception applied. *See United States v. Leon*, 468 U.S. 897 (1984). Miknevich entered a conditional plea of guilty, reserving the right to challenge the District Court's probable cause determination on appeal. He filed a notice of appeal raising this issue and also challenging his sentence. We will affirm.

II.

Because the contents of the affidavit are at issue, we will quote from it directly as follows:

> On 8/16/2007 at Approx. 1559 hr EDT, Delaware State Police Cpt. R. Scott Garland was conducting an investigation into the use of P2P file sharing networks in the distribution of child pornography images and movies in violation of Pennsylvania Crime Code Section

3

631 (C), (D), Sexual Abuse of Children (Possession and dissemination of Child Pornography). While conducting this investigation, an off-the-shelf publically available gnutella client was used. At this time, the network was queried for files indexed by a term I know to be related to child pornography. The network returned to Det. Garland's computer a list of files associated with this term. The list contained details about these files including the file name, file type, file size, SHA1 value for the file and a number of users on the network with the file or portions of the file available for download by other gnutella network users.

Det. Garland reviewed the list of files and observed a file named, "!!Novo Ptsc-Alyo(6yo)&Ali(7yo) Ptsc-littlenorwegian angels stroke their erect clits-nudist child,"with an SHA1 value of RGQCV2AC6XD3JE5KULOBAJWQTVBBXXHC. Det. Garland knows this file with this SHA1 value to be child pornography. The movie is described as children, under the age of eighteen years old engaged in sexual acts and/or poses. Det. Garland then attempted to download this movie form (sic) those sharing it on the network.

4

Shortly after Det. Garland indicated to download the movie, the network returned a list of users with their IP address, who had the file or portions of the file available to download from it. Det. Garland reviewed this list and observed a user with the IP address of 75.75.148.179. The software was set to locate computers sharing images of child pornography. Det. Garland was presented with an IP address of 75.75.148.179 and captured this IP address by performing a "Netstat capture" on 8/16/2007 @ 1559 hrs. EDT.

Lt. Peifer viewed the video file based on the SHA1 value and based on my training and experience the children appear to be under the age of 18 years old.

On 9/17/2007, Lt. Peifer prepared a Court Order in the Court of Common Pleas in Delaware County [Pennsylvania] directing Comcast Cable Communications to supply subscriber information on the person assigned to IP address 75.75.148.179 on 8/06/2007 @ 1559 hrs ESDT. This order was submitted to Delaware County Common Please (sic) Court Judge Frank T. Hazel.

On 9/21/2007 at approx. 1616 hrs Lt. Peifer received a response from Comcast Cable

5

Communications in reference to the court order sent.

Comcast indicated that the IP address 75.75.148.179 on 8/16/2007 @1559 hrs EDT was in use by the following subscriber in the name of:

Steven Miknevich, 72 Pincecrest Ave., Lft, Dallas, Pa. 18612 PH# 570-760-7643.

Based on this information, Pennsylvania State Trooper Michael Gownley averred to a Pennsylvania district justice that computer images depicting children less than eighteen years of age engaged in sexual conduct were located at Miknevich's residence and that those depictions were evidence of a crime involving the sexual abuse of children. Gownley obtained a warrant and seized Miknevich's computer.

Miknevich argues that the warrant is infirm because the Pennsylvania district justice premised his probable cause determination on the file name and its related electronic identification SHA1 value[1], not on his or the investigating

---

[1] A SHA1 (or SHA-1) value is a mathematical algorithm that stands for Secured Hash Algorithim used to compute a condensed representation of a message or data file. Thus it can act like a fingerprint. *See, e.g., Lexmark Intern., Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 530 (6th Cir. 2004).

officers' viewing of the file's contents. Further, he maintains that the only officer who did view the file did not say that he saw child pornography and that the district justice only inferred as much. According to Miknevich, speculation cannot be the basis upon which a probable cause determination is made.

## III.

We first distinguish between the standards that govern our review.[2] We exercise plenary review over the District Court's evaluation of the Pennsylvania district justice's probable cause determination because the District Court limited its decision to the information contained in the warrant affidavit. *United States v. Vosburgh*, 602 F.3d 512, 526 (3d Cir. 2010); *see also United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010). Because our review of the District Court's decision denying Miknevich's motion to suppress is plenary, we apply the same deferential standard that the District Court applied in reviewing the initial probable cause determination. *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993). That is, we must pay "great deference" to the magistrate's initial determination of probable cause. *Illinois v. Gates*, 462 U.S. 213, 236 (1983).[3]

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

[3] Although the warrant was issued by a Pennsylvania district justice, its validity is governed by federal law. *United States v. Rickus*, 737 F.2d 360, 364 (3d Cir. 1984).

Thus, in reviewing the probable cause assessment, we do not undertake a de novo review of whether probable cause actually existed. *Jones*, 994 F.2d at 1054. Instead, like that of the District Court, our role is limited to ensuring that a magistrate[4] had a "substantial basis" for concluding that the affidavit supporting the warrant established probable cause. *Id.* at 1054-55; *see also Gates*, 462 U.S. at 236. When we make this assessment, we confine ourselves "to the facts that were before the magistrate judge, i.e., the affidavit, and do not consider information from other portions of the record." *Jones*, 944 F.2d at 1055. Moreover, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* at 1057-58. With that said, however, the great deference afforded a magistrate's determination "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusion." *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983), *cert. denied sub nom., Sanchez v. United States*, 466 U.S. 904 (1984).

The principles governing a probable cause determination are well established. A magistrate may find probable cause when, viewing the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place."

---

[4.]We use the term "magistrate" generally, referring to any member of the judiciary – federal or state – who has the authority to issue warrants.

*Gates*, 462 U.S. at 238. Proof beyond a reasonable doubt is not required. *Id.* at 235. Further, if a substantial basis exists to support the magistrate's probable cause finding, we must uphold that finding even if a "different magistrate judge might have found the affidavit insufficient to support a warrant." *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993). The duty of a reviewing court is "simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." *Gates*, 462 U.S. at 238. We have held that "probable cause is a fluid concept" that turns on "the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Shields*, 458 F.3d 269, 277 (3d Cir. 2006) (citing *Gates*, 462 U.S. at 232). The supporting affidavit to a search warrant is to be read in its entirety and in a common sense, nontechnical manner. *See United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997).

IV.

Miknevich argues that the affidavit of probable cause was deficient because it did not contain enough information to give the Pennsylvania district justice a substantial basis to conclude that there was a fair probability that contraband or evidence of criminal activity would be found on his computer. He points to several alleged defects: the affidavit does not indicate that any investigating officer actually downloaded the suspect video file; the affidavit does not indicate that anyone ever actually viewed the suspect file; and the affidavit contains no description of the suspected images or actions in these files.

9

We credit Miknevich's criticism of the affidavit as far as it goes. The affidavit was, in parts, inartfully drafted. This stems, no doubt, from the fact that the affiant took no direct part in the investigation, and instead related the work of other law enforcement officials – Det. Garland and Lt. Peifer. Although the District Court relied on the fact that the affidavit did not state that Garland never viewed the contents of the file, the opposite is equally true – the affidavit does not specifically state that he did. Garland conducted a search for suspected child pornography using a term he knew to be related to that crime. But Garland does not indicate what that term was. His search generated a list of files associated with this term, but Garland does not provide the district justice with a detailed description of what those files depict. After reviewing the list, one file with a particular SHA1 value was noticed. Garland "knew this file and this SHA1 value to be child pornography." The detective, however, does not indicate how he knew this information.

It is not unreasonable for us to assume that Garland never actually viewed the images or videos. The affidavit relates that he "attempted" to download the file contents, which, we could conclude, means he was unsuccessful and never actually viewed the contents of the files in question. Further, Garland indicates that "[t]he movie is described as children, under the age of eighteen years old engaged in sexual acts and/or poses." Here, Garland relies on what could be a second-hand description of the file's contents – not his own viewing of the contents. That, however, does not make the affidavit infirm.

10

Garland forwarded his search results to Lt. Peifer of the Delaware County Pennsylvania Internet Crimes Against Children Task Force. The Government maintains that Peifer did indeed view the file's contents. Here again, the affidavit is imprecise, relating that Piefer "viewed the video file based on the SHA1 value and based on [his] training and experience the children appear to be under the age of 18 years old." The statement that he viewed the file "based on its SHA1 value" is confusing. It could indicate that Peifer merely viewed the file as part of the listing generated by the search. Assuming, however, that Peifer did view the contents of the file, he nonetheless failed to describe any of the images contained therein with any detail. He avers, based on his training and experience, that the children "appear to be" under the age of eighteen. Additionally, although the affidavit does state that Peifer is "familiar with Peer-to-Peer file sharing," it does not relate the extent of Peifer's experience and training.

Thus, our review of the affidavit leaves a clear impression: the state magistrate was presented with an affidavit that provided no factual details regarding the substance of the images in question. Although either the actual production of the images, or a sufficiently detailed description of them, satisfies the Fourth Amendment's probable cause requirement, an insufficiently detailed or conclusory description cannot. *See New York v. P.J. Video*, 475 U.S. 868, 874 (1986). We believe, however, that even given the infirmities we highlighted, the affidavit still contained information sufficient to permit a finding of probable cause by the magistrate.

11

A.

It is clear that a magistrate can determine probable cause without seeing the images and/or viewing the contents of an illicit computer file. The Supreme Court has stated that:

> [W]e have never held that a magistrate must personally view allegedly obscene films prior to issuing a warrant authorizing their seizure. On the contrary, we think that a reasonably specific affidavit detailing the content of a film generally provides an adequate basis for the magistrate to determine whether there is probable cause to believe that the film is obscene, and whether a warrant authorizing the seizure of the film should issue.

*P.J. Video*, 475 U.S. at 847. We therefore reject any suggestion that a magistrate must review the contents of the actual files in question, or that a search warrant must include copies of the images giving rise to the request for a warrant.[5]

---

[5.] Although a magistrate is not required to do so, at least one jurist has urged his colleagues to view such files. Judge John Adams of the United States District Court for the Northern District of Ohio recently wrote a passionate opinion (albeit on sentencing), imploring reviewing courts to "personally examine the images at issue and not simply rely on a written description of their contents. There are some

Although magistrates do not have to view these files, the question more pertinent here is whether the investigating officers must do so.

It can be problematic, to say the least, when a warrant application leaves one questioning whether anyone viewed the contents of the file in question. Nothing in the opinion we announce today should be taken as a rejection or relaxation of what we believe continues to be the best procedure for law enforcement officials to follow. It remains the better practice for an applicant seeking a warrant based on images of alleged child pornography to append the images or to provide a description of the images sufficient to enable the magistrate to determine independently whether probable cause exists. *See,*

---

images that are haunting and they cannot be unseen. However, any uneasiness felt by the individual reviewing the images pales in comparison to the harm caused by the image being created in the first place." *United States v. Cunningham*, 680 F. Supp. 2d 844, 854 (N.D. Ohio 2010); *see also United States v. Fiorella*, 602 F. Supp. 2d 1057, 1075 n.8 (N.D. Iowa 2009) ("It is easier to overlook the horrors of child pornography when, as is often the case, the material at issue is not presented to the sentencing judge. For purposes of efficiency and minimization of re-victimization of the children depicted, the government and the defendant will often (and rightly so) enter into stipulations about the number and nature of the photographs at issue. But the horrors of child pornography are real even if those who sit in judgment do not have occasion to view them.").

13

*e.g., United States v. LaFortune*, 520 F.3d 50, 56 (1st Cir. 2008). Here, however, the magistrate could have drawn a reasonable inference of the file's contents based on its highly descriptive name and SHA1 value.

B.

Determining the existence (or lack) of probable cause involves making a "practical, common-sense decision" as to whether, given the totality of facts, a "fair probability" exists that contraband will be found in a particular place. *Gates,* 462 U.S. at 238. Probable cause can be inferred by "considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (*citing United States v. Jones*, 994 F.2d 1051 (3d Cir. 1993)) (internal quotation marks omitted). Indeed, we have specifically instructed that an affidavit filed in support of an application for a search warrant is to be read in its entirety, with the focus on what the affidavit includes, not what is missing. *See Williams*, 124 F.3d at 420; *Jones*, 994 F.2d at 1056.

The affidavit here provided the magistrate with sufficient information to make an independent assessment of probable cause. The title of the computer file at issue contained highly graphic references to specific sexual acts involving children. The file name refers to the ages of the children ("6yo" and "7yo") and to graphic sexual activities ("little norwegian angels stroke their erect clits"). This

14

description indicates minors engaged in sexually explicit conduct. The unmistakable inference arising from this highly descriptive file name is that the file's contents include material pertaining to the sexual exploitation of children. Given the name of the file in question and its graphic reference to specific sexual acts involving young children, and given the file's SHA1 value, this inference is a strong one and established probable cause.

We recognize that file names are not always a definitive indication of actual file content and, therefore, only after downloading and viewing a particular file can one know with certainty whether the content of the file is consistent with its designated name. However, "[c]ertainty has no part in a probable cause analysis." *United States v. Frechette,* 583 F.3d 374, 380 (6th Cir. 2009); *see also Vosburgh*, 602 F.3d at 527; *United States v. Urban*, 404 F.3d 754, 774 (3d Cir. 2005) (quoting *Tehfe*, 722 F.2d at 117-18). On the contrary, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 462 U.S. at 244 n.13. We acknowledge that in some circumstances a computer file name may not provide meaningful insight into its contents, especially where the file name contains a term or name that is commonplace or otherwise capable of different interpretations. However, it does not necessarily follow that file names can never be regarded as a logical indication of the file's contents. A file's name may certainly be explicit and detailed enough so as to permit a reasonable inference of what the file is likely to depict. The unmistakable inference which arises from the

15

file name here is that its contents include material pertaining to the sexual exploitation of children.

Further, the affidavit relates that Garland knew the file in question contained child pornography because he recognized the file's SHA1 value, RGQCV2AC6XD3JE5KULOBAJWQTVBBXXHC, as one indicating child pornography. This too is relevant to probable cause. The affidavit explains the significance of the SHA1 value as a 'digital fingerprint' and avers that the investigating officers were familiar with the SHA1 value associated with the file on Miknevich's computer. We conclude that the affidavit seeking the search warrant contained sufficient facts to support a finding that there was a fair probability that Miknevich possessed child pornography and that there was evidence of such possession at the location described in the affidavit. The District Court's order upholding the search warrant will be affirmed.

C.

Because we find that the affidavit presented to the district justice was sufficient to provide a "substantial basis" for finding a fair probability that evidence would be located on Miknevich's computer, we need not reach the issue of good faith reliance on a warrant pursuant to *Leon*. Therefore, and for the reasons set forth above, we will affirm the District Court's decision.

V.

16

As a final matter, Miknevich challenges his sentence of 151 months imprisonment. He argues this sentence violates his right to be free from cruel and unusual punishment under the Eighth Amendment to the Constitution. We employ a plenary standard of review to a defendant's Eighth Amendment challenge to his sentence. *United States v. Walker*, 473 F.3d 71, 75 (3d Cir. 2007). Where, as here, an Eighth Amendment challenge to a sentence was not brought before the District Court, we review for plain error. *United States v. Couch*, 291 F.3d 251, 252-53 (3d Cir. 2002). Finding no error, we will affirm Miknevich's sentence.

We have pointed out that the Eighth Amendment proscribes "punishment 'grossly disproportionate to the severity of the crime.'" *United States v. Martorano,* 866 F.2d 62, 69 (3d Cir. 1989) (quoting *Ingraham v. Wright*, 430 U.S. 651, 667 (1977)). Thus, "[a]lthough the [Supreme Court's] proportionality principle applies to sentences for terms of years, only an extraordinary case will result in a constitutional violation." *Walker*, 473 F.3d at 79 (citing *Lockyer v. Andrade*, 538 U.S. 63, 72, 77 (2003)).

Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment. *See, e.g., United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006) (quotation omitted). This is so because we accord substantial deference to Congress, as it possesses broad authority to determine the types and limits of punishments for crimes. *United States v. Raad*, 406 F.3d 1322, 1323 (11th Cir. 2005) (quotation marks omitted). For that reason, the Supreme Court has made it

17

clear that, "'[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare.'" *Solem v. Helm*, 463 U.S. 277, 289-90 (1983) (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)); *see also United States v. Walker*, 473 F.3d 71, 80 (3d Cir. 2007).

We fail to see how this is such an extraordinary case. Miknevich's guideline range was 151-188 months in prison. Here, the District Court sentenced Miknevich to 151 months imprisonment–a sentence at the very bottom of the suggested sentencing range. Miknevich has not shown, as is his burden, that his sentence plainly violates the Eighth Amendment. Moreover, this case does not remotely resemble any of the cases in which the Supreme Court found a great disparity between crime and sentence so as to constitute an Eighth Amendment violation. *See Solem,* 463 U.S. at 303 (finding that a sentence of life imprisonment without the possibility of parole for a repeat offender whose prior crimes were relatively minor and whose charged crime was minor and nonviolent violated the proportionality principle of the Eighth Amendment); *Weems v. United States*, 217 U.S. 349, 358, 382 (1910) (finding that a sentence of 15 years' imprisonment and hard labor for falsifying a public document was unconstitutional). In sum, the District Court did not plainly err in sentencing Miknevich within the statutory limits, which neither we nor the Supreme Court has held to be cruel and unusual and Miknevich failed to meet his burden to establish otherwise.

VI.

18

The District Court's judgment of conviction and sentence will be affirmed.