J-A20020-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DANIEL JOHN DUSCH :
:
Appellant : No. 1880 WDA 2019

Appeal from the Judgment of Sentence Entered November 12, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0002231-2019

BEFORE: BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    FILED OCTOBER 16, 2020

Appellant, Daniel John Dusch, appeals from the judgment of sentence

entered on November 12, 2019. We affirm.

The trial court ably summarized the underlying facts of this case:

> This matter arises out of [Appellant's] arrest [for possession
> of a controlled substance and possession of drug
> paraphernalia,] following the execution of a search warrant
> on February 8, 2019, at his residence at 398 Simms Street,
> [in Pittsburgh]. The search warrant was issued pursuant to
> an affidavit of probable cause [that was sworn] by Detective
> [Michael] Lafferty of the Pittsburgh Police Department on
> February 8, 2019[.]
>
> [The affidavit of probable cause] stated that [Detective
> Lafferty] received a complaint in [December 2018], via
> telephone[,] from a source that wished to remain
> anonymous[. The anonymous source told Detective Lafferty]
> that [Appellant] was selling heroin and cocaine in the [Mount]
> Washington [neighborhood of Pittsburgh]. The informant
> wished to remain anonymous out of concern for [his/her]
> safety. The informant [told Detective Lafferty] that
> [Appellant] leaves his home at 398 Simms Avenue, where he

lives with his elderly parents who have medical issues, and sells narcotics to individuals in vehicles in the alley located near his residence. The informant also stated that [Appellant] rides a bicycle around the neighborhood selling the narcotics. . . .

Based on the information received from the informant, Detective Lafferty and [another detective] conducted a trash pull [of Appellant's garbage] on January 5, 2019. The affidavit indicated they arrived at [Appellant's] residence and observed numerous black garbage bags sitting outside the residence awaiting the morning trash collection. The detectives retrieved three of the black garbage bags[,] which yielded 17 empty [stamp] bags of heroin/fentanyl, marked as "Gladiator" in blue ink, "Boost" in red ink, "Gucci" in black ink[,] and the Facebook symbol in blue ink. The trash also contained two baggie diapers,[1] four small [Ziploc] baggies[,] and [the following indicia: "a The Medicine Shoppe Pharmacy prescription for John Dusch, a State Farm insurance card for a 2016 Toyota Corolla for a John and Anna Dusch, a County of Allegheny Tax statement for a John and Ann Dusch, a Peoples Gas bill for a Ann and John Dusch, [a] Jordan Tax service letter for John and Ann Dusch, a City of Pittsburgh real estate tax bill to a John and Ann Dusch, and a Medicare Summary notice for Anna Dusch." Affidavit of Probable Cause, 2/8/19, at 4.] The affidavit indicated that field tests of the diaper baggies were positive for cocaine.

The affidavit further [declared] that[,] on February 8, 2019, a second trash pull was conducted consisting of six black garbage bags. In this trash pull the detectives recovered 38 empty [stamp] bags of heroin/fentanyl[,] marked "Viking" in purple ink and "Devils Live" in pink ink. Also recovered were three baggie diapers, two sandwich bags, two small rubber bands and two pieces of indicia for John and Ann [Dusch].

_____

[1] Within the affidavit of probable cause, Detective Lafferty defined a baggie "diaper" as "a sandwich bag with the corners ripped off, giving it the appearance of a 'diaper.'" Affidavit of Probable Cause, 2/8/19, at 5. In the affidavit, Detective Lafferty declared: "I know from my training and experience that the corners of the bags are used to package narcotics, while the rest of the bag is discarded." Id. at 5-6.

The affidavit further set forth that[,] based on the [detective's] experience and knowledge, the diaper baggies, stamp baggies[,] and [small rubber bands are] used to package narcotics. . . .

Trial Court Opinion, 3/10/20, at 2-3 (some capitalization omitted).

On February 8, 2019, the police executed the search warrant upon Appellant's residence and, during the search, the police discovered "a bundle [of a heroin/fentanyl mixture] with another stamp bag next to it" in Appellant's sleeping area. N.T. Trial, 10/31/20, at 11. Appellant was arrested and charged with two counts of possession of a controlled substance and one count of possession of drug paraphernalia.[2, 3]

Prior to trial, Appellant filed a motion to suppress and argued that all of the evidence against him must be suppressed because the search warrant was not supported by probable cause. Specifically, Appellant claimed, the information from the confidential informant and the results from the first trash pull were stale and could not support the issuing authority's probable cause determination, as the "police obtained [the] information from the informant [about Appellant's drug activity] roughly two months before the search warrant was sought, and the first trash pull occurred over a month before the search warrant was obtained." Appellant's Motion to Suppress, 7/19/19, at 4 (some capitalization omitted). Appellant also claimed that the second trash

_____

[2] 35 P.S. § 780-113(a)(16) and (32), respectively.

[3] The Commonwealth also charged Appellant with one count of persons not to possess firearms. However, the trial court found Appellant not guilty of this charge. N.T. Trial, 11/12/19, at 3.

pull, standing alone, could not support the issuing authority's probable cause determination because the second trash pull only "indicated significant user paraphernalia had been discarded and [could not], alone, establish grounds for probable cause of manufacture, delivery, or present possession of controlled substances with the intent to deliver." Id.

The trial court denied Appellant's suppression motion on October 3, 2019 and, following a bench trial, Appellant was found guilty of two counts of possession of a controlled substance and one count of possession of drug paraphernalia. N.T. Trial, 11/12/19, at 3. On November 12, 2019, the trial court sentenced Appellant to serve an aggregate term of two years of probation for his convictions. N.T. Sentencing, 11/12/19, at 5.

After the PCRA court reinstated Appellant's direct appeal rights nunc pro tunc, Appellant filed a timely notice of appeal. Appellant raises one claim to this Court:

> Under the [United States] and Pennsylvania Constitutions, police must have probable cause that they will likely find evidence in a given place in order to obtain a search warrant. In this case, the Commonwealth only conducted a single, non-stale trash pull that discovered evidence of drug use. Accordingly: did the trial court err when it found that some evidence of past drug possession from a single trash pull provided probable cause for police to obtain a search warrant for the residence?

Appellant's Brief at 5.

As we have held: "[o]nce a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the

evidence, that the challenged evidence was not obtained in violation of the defendant's rights." Commonwealth v. Wallace, 42 A.3d 1040, 1047-1048 (Pa. Super. 2012) (en banc); see also Pa.R.Crim.P. 581(H). With respect to an appeal from the denial of a motion to suppress, our Supreme Court has declared:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing [such a ruling by the] suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

Commonwealth v. Eichinger, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted).

On appeal, Appellant challenges the validity of the search warrant for his residence and claims that the search warrant was not supported by probable cause. As our Supreme Court has summarized:

> Before an issuing authority may issue a constitutionally valid search warrant he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. The requisite probable cause must exist at the time the warrant is issued and be based on facts closely related in time to the date of issuance. If the district justice is presented with evidence of criminal activity at some prior time, it must also be established that the criminal activity continued up to the time of the request for the warrant in order to support a finding of probable cause.

Commonwealth v. Jones, 484 A.2d 1383, 1387 (Pa. 1984) (citations omitted).

"[T]he question of whether probable cause exists for the issuance of a search warrant must be answered according to the 'totality of the circumstances' test articulated in Commonwealth v. Gray, 503 A.2d 921 (Pa. 1985), and its Pennsylvania progeny, which incorporates the reasoning of the United States Supreme Court in Illinois v. Gates, 462 U.S. 213 (1983)." Commonwealth v. Arthur, 62 A.3d 424, 432 (Pa. Super. 2013) (some quotations and citations omitted). In accordance with Gray and Gates, "the task of the issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gray, 503 A.2d at 925, quoting Gates, 462 U.S. at 238.

With respect to a court that is reviewing an issuing authority's probable cause determination:

> [the] reviewing court is not to conduct a de novo review of the issuing authority's probable cause determination, but is simply to determine whether or not there is substantial evidence in the record supporting the decision to issue a warrant. . . . In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

Commonwealth v. Jones, 988 A.2d 649, 655 (Pa. 2010) (citations, quotations, and corrections omitted).

Thus, although "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause," the deference afforded a magistrate judge ensures that, "[i]f a substantial basis exists to support the magistrate's probable cause finding, [the trial court] must uphold that finding even if a different magistrate judge might have found the affidavit insufficient to support a warrant." United States v. Leon, 468 U.S. 897, 914 (1984); United States v. Miknevich, 638 F.3d 178, 182 (3rd Cir. 2011) (citations and quotations omitted).

"We must limit our inquiry to the information within the four corners of the affidavit submitted in support of probable cause when determining whether the warrant was issued upon probable cause." Arthur, 62 A.3d at 432.

Within Appellant's brief, Appellant argues that we must separate the events set forth in the affidavit and then analyze each piece of information in isolation. Thus, Appellant argues, we must begin our analysis by disregarding the first trash pull and the informant's tip because both were "over a month old [and] stale." Appellant's Brief at 14. Appellant claims that, when this information is completely disregarded, the only evidence supporting the search warrant is "a single trash pull" that occurred on the day the search warrant was issued; and, Appellant claims, this single trash pull resulted in

"minimal evidence," which could not "provide probable cause to search." Id. at 22-23. Appellant's argument and analysis fail.

It is true that "stale information cannot provide probable cause in support of a warrant." Commonwealth v. Janda, 14 A.3d 147, 158 (Pa. Super. 2011) (citation omitted). Thus, the "age of the information supporting a warrant application is a factor in determining probable cause. If too old, the information is stale, and probable cause may no longer exist." Id. (quotations and citations omitted). Nevertheless:

> [a]ge alone . . . does not determine staleness. The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant. Rather, we must also examine the nature of the crime and the type of evidence.

Id. at 158–159 (quotations and citations omitted). Relatedly, "[m]ere lapse of time between discovery of criminal activity and issuance of a search warrant will not necessarily dissipate probable cause and a showing that criminal activity is likely to have continued up to the time of issuance of a warrant will render otherwise stale information viable." Commonwealth v. Karns, 566 A.2d 615, 617 (Pa. Super. 1989) (quotations and citations omitted).

Further, and contrary to Appellant's argument on appeal, in determining whether "there is substantial evidence in the record supporting the decision to issue a warrant," we do not isolate the events set forth in the affidavit of probable cause and consider each piece of information separately, divorced from the whole. See Appellant's Brief at 14-16. Instead, we must view the totality of the circumstances and determine whether substantial evidence

exits, which would support the issuing authority's finding that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." See Jones, 988 A.2d at 655; Gray, 503 A.2d at 925.

In this case, the totality of the circumstances supports the issuing authority's finding of probable cause. To be sure, the affidavit of probable cause declared that, in December 2018, an anonymous complainant informed Detective Lafferty that Appellant was selling heroin and cocaine in the alley next to his home and throughout the Mount Washington neighborhood of Pittsburgh. Affidavit of Probable Cause, 2/8/19, at 3. The complainant informed Detective Lafferty that Appellant lives in the residence with his elderly parents, Ann and John Dusch, that Appellant's parents have medical issues, and that Appellant "sells narcotics all day and night long." Id.

Detective Lafferty initially corroborated the informant's tip on January 5, 2019, when he conducted a trash pull of Appellant's garbage and discovered evidence that Appellant was packaging narcotics in his house for sale. Specifically, Detective Lafferty discovered in the garbage: "17 empty stamp bags of heroin/fentanyl," with four different name brands stamped on the bags; two baggie diapers that tested positive for the presence of cocaine; and, four small Ziploc baggies. Id. at 4. The trash pull also corroborated other aspects of the informant's tip, including that Appellant lived with his parents, that Appellant's parents were elderly, and that Appellant's parents had medical issues. See id. (declaring that Detective Lafferty recovered, from the first trash pull: "a The Medicine Shoppe Pharmacy prescription for John Dusch,

a State Farm insurance card for a 2016 Toyota Corolla for a John and Anna Dusch, a County of Allegheny Tax statement for a John and Ann Dusch, a Peoples Gas bill for a Ann and John Dusch, Jordan Tax service letter for John and Ann Dusch, a City of Pittsburgh real estate tax bill to a John and Ann Dusch, and a Medicare Summary notice for Anna Dusch").

Detective Lafferty then conducted a second trash pull of Appellant's garbage on February 8, 2019 – which was the same day that Detective Lafferty swore the affidavit of probable cause and the issuing authority authorized the search warrant of Appellant's residence. During this trash pull, Detective Lafferty discovered: "38 empty stamp bags of heroin/fentanyl," with two different brand names stamped on the bags; three baggie diapers; two sandwich baggies; and, two small rubber bands. Id. at 5.

Viewing the above information in its totality and in a common-sense manner, we conclude that there is substantial evidence that Appellant was engaged in a continuous and ongoing narcotics packaging and selling operation that originated in his house. Under our precedent, the continuous and ongoing nature of this illegal operation – which the police last verified on the same day that the search warrant was issued – prevented the informant's tip and the initial trash pull from becoming stale. See, e.g., Karns, 556 A.2d at 617 ("a showing that the criminal activity is likely to have continued up to the time of the issuance of the warrant will render otherwise stale information viable"); Commonwealth v. Shaw, 281 A.2d 897, 899 (Pa. 1971) ("[i]f the issuing officer is presented with evidence of criminal activity at some prior

time, this will not support a finding of probable cause as of the date the warrant issues, unless it is also shown that the criminal activity continued up to or about that time") (emphasis added); c.f. Commonwealth v. Hoppert, 39 A.3d 358, 363 (Pa. Super. 2012) ("a stale observation of items that can be quickly disposed of, such as drugs, does not provide probable cause for a warrant absent evidence of an ongoing course of conduct on the part of the defendant") (emphasis added).

Thus, we conclude the trial court did not err when it determined that substantial evidence supported the issuing authority's determination that, on February 8, 2019, there was a fair probability that narcotics would be found in Appellant's house. Appellant's claim to the contrary fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2020

- 11 -