**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1022
_____

UNITED STATES OF AMERICA

v.

DARWIN LAMEL GREEN,
also known as Darwin Green,
                                         Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 2-21-cr-00036-001)
District Judge: Honorable Robert J. Colville
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 8, 2023

Before: RESTREPO, SCIRICA, and SMITH, *Circuit Judges*

(Filed: January 25, 2024)
_____

OPINION[*]
_____

RESTREPO, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

Darwin Green entered a conditional guilty plea to a violation of Title 18, United States Code, Section 922(g)(1), and the District Court sentenced him to 36 months' imprisonment. His plea agreement reserved his right to appeal the denial of his motion to suppress evidence and withdraw his plea should he prevail. Denial of a motion to suppress is appropriate when probable cause existed for a magistrate to issue a search warrant. Here, that standard was met. We will affirm.[1]

## I

In May 2019, Officer Joshua Sonney became suspicious of Mr. Green when a confidential informant reported that Mr. Green and an associate, Darrian Brooks, were actively selling heroin and crack cocaine. The officer believed that the informant's record of cooperation with law enforcement lent credibility to the claims. At the time of the informant's tip, Mr. Green had already been convicted of three drug-related crimes. So, Officer Sonney and other narcotics taskforce members began investigating his behavior and surveilling his residences.

Mr. Green was at that point associated with two houses less than a half-mile apart: 707 Hamilton Avenue in Farrell, Pennsylvania ("Hamilton") and 1287 Baldwin Avenue in Sharon, Pennsylvania ("Baldwin"). Officer Sonney and other taskforce members zeroed in on those addresses and, on five documented occasions over the next three months, used the

---

[1] We have jurisdiction under 28 U.S.C. § 1291.

informant to conduct a series of controlled purchases at Baldwin, three of which directly involved Mr. Green.[2]

The first purchase involved the informant contacting Mr. Green, being observed interacting with him at Baldwin, and receiving narcotics directly from him. Then, during the fourth sale, Mr. Green told the informant that he was not home—which the informant took to mean Hamilton—but made it clear that a visit to Baldwin would make a transaction possible. The informant went to Baldwin, where he purchased narcotics. Law enforcement observed Mr. Green's vehicle at Baldwin during the drug sale. The informant again reported receiving narcotics directly from Mr. Green, who police observed driving directly to Hamilton after the sale. During the fifth and final exchange, Mr. Green told the informant to go to Baldwin to complete the requested transaction. There, the informant bought drugs from Mr. Brooks. During each of these incidents, Mr. Green, in communication with the informant, referred to Baldwin as "the office." During the last transaction, Mr. Green told the informant that he was at "the crib," which the informant again understood to mean

---

[2] In each instance, the informant would first meet with police for a thorough search. Then, under police observation, the informant would contact either Mr. Green or Mr. Brooks to arrange a purchase. On each occasion, Mr. Green or Mr. Brooks instructed the informant to go to Baldwin. Police would then follow the informant's vehicle to Baldwin and observe the informant enter the house and later return to the vehicle. Finally, police would reconvene with the informant to recover and document the contraband obtained during the transaction at Baldwin.

Hamilton. Meanwhile, sources detailed that Mr. Green kept the proceeds of his suspected drug dealing at Hamilton.

Officer Sonney took this information and sought a warrant. In a twenty-four-page probable cause affidavit, he referenced multiple confidential sources, police observations, and previous statements made by Mr. Green to police, all of which indicated that he lived in Hamilton at the time of the investigation and had a connection to Baldwin as a possible secondary home or place of business. Officer Sonney also stated that in his experience, residential searches executed in connection with drug investigations were likely to uncover narcotics and tools of the trade, including packaging and processing materials, records, and firearms. He concluded that his experience, together with the averred facts, suggested there was probable cause to find that evidence of criminal activity would be recovered at *both* Baldwin and Hamilton, and accordingly requested warrants to search each location for evidence in connection with suspected drug trafficking.

The Hamilton warrant application listed as items to be searched for and seized: "[b]ooks, records receipts, notes, ledgers, and other papers relating to [the distribution and sale of] controlled substances," and, in an addendum, "[a]ny and all firearms[,] including but not limited to handguns, rifles, shotguns, semi-automatic and automatic firearms."[3]

---

[3] Because doing so is unnecessary for the disposition of this case, *see, e.g.*, *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d 137, 149 (3d Cir. 2002), we will not decide whether the search for firearms authorized by the first warrant was adequately supported by Officer Sonney's affidavit. Our discussion instead focuses on the application's support for the search of his home for

App'x 45–46. A state magistrate judge issued the requested search warrant. One day later, upon entering Hamilton, narcotics agents observed evidence of drug use and an AR-15-style rifle in plain view. At that time, officers stopped their search, and an experienced narcotics agent submitted a second, more expansive warrant application for Hamilton, which was approved. Law enforcement ultimately confiscated firearms and ammunition from Hamilton, serving as the basis for Mr. Green's federal prosecution.

Following his indictment, Mr. Green moved to suppress the evidence recovered from Hamilton. The District Court denied the motion, Mr. Green pleaded guilty (preserving his right to challenge the denial on appeal), he was sentenced, and this timely appeal followed.

## II

We exercise plenary review of a district court's assessment of a magistrate's probable cause determination. *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010). But the magistrate's initial probable cause determination is subject to deferential review. *Id*. "If a substantial basis exists to support the magistrate's probable cause finding, we must

---

records relating to drug distribution. Even if we were to hold that the search for firearms was unsupported by probable cause, invalidation of one component of a warrant does not generally invalidate the entirety. *Id*. Plus, the discovery of a rifle in plain view and expanded warrant application render this question moot. *See, e.g.*, *United States v. Patterson*, 405 Fed. Appx. 602, 605 (quoting *Horton v. California*, 496 U.S. 128, 136-37 (1990)) (upholding the plain view discovery of a firearm where officers were lawfully present and the incriminating character of the firearm was immediately apparent). Similarly, because we will hold that the search for records was supported by probable cause, we do not address whether law enforcement's conduct was also covered by the good faith exception.

uphold that finding even if a 'different magistrate judge might have found the affidavit insufficient to support a warrant.'" *Id.* (quoting *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993)). Our review is thus confined to the question of whether "given all the circumstances set forth in the affidavit," there was a substantial basis for the magistrate to conclude that there was "a fair probability that contraband or evidence of a crime [would] be found" at Hamilton. *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *see also United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993).

### III

Mr. Green contends that Officer Sonney's affidavit was not supported by probable cause because it both failed to establish a sufficient nexus between his drug dealing and his home and insufficiently established the credibility of any confidential informants. However, probable cause exists when, given "the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (quoting *Gates*, 462 U.S. at 238). Specifically, there must be "a sufficient nexus between the contraband to be seized and the place to be searched." *United States v. Golson*, 743 F.3d 44, 54 (3d Cir. 2014). On appeal, we read the affidavit "in its entirety and in a common sense, nontechnical manner." *Miknevich*, 638 F.3d at 182. If we determine there was a substantial basis for the magistrate's finding of probable cause, we must uphold that finding. *Id.*

6

We do so here. Mr. Green claims that the affidavit did not include evidence that Hamilton contained drug-related contraband. Yet "[d]irect evidence linking the place to be searched to the crime is not required for the issuance of a search warrant." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (quoting *Conley*, 4 F.3d at 1207). Moreover, in a drug distribution investigation, probable cause to search a target's residence is not necessarily dependent upon direct evidence that contraband will be found there. *Stearn*, 597 F.3d at 558. Many factors may connect an accused person's drug dealing to his home, including: "the conclusions of experienced officers 'regarding where evidence of a crime is likely to be found,' the proximity of [his] residence to the location of criminal activity, [and] probable cause to arrest the [individual] on drug-related charges." *Id.* at 559–60 (citations omitted). These factors supported the magistrate's determination here.

Officer Sonney, a nine-year law enforcement veteran with relevant experience in narcotics investigations, credibly averred that drug dealers commonly keep evidence of their acts in their homes. Magistrate judges regularly defer to the assessments of experienced law enforcement officers like him on matters within their competence, and reviewing courts must defer to magistrates' credibility determinations. *See, e.g.*, *Burton*, 288 F.3d at 99, 105. Moreover, courts regularly defer to what experienced narcotics officers aver about the common practices of drug dealers. *See, e.g.*, *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) ("The issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers . . . ."). While these

experience-based conclusions, alone, may not be enough to establish probable cause, *see, e.g.*, *United States v. Weber*, 923 F.2d 1338 (9th Cir. 1991); *cf.*, *United States v. Loy*, 191 F.3d 360 (3d Cir. 1999), the magistrate here correctly examined the totality of the circumstances and found a sufficient nexus.

Take, for example, the proximity of the two residences, which also supports a finding of sufficient nexus. *See Stearn*, 597 F.3d at 559–60; *Hodge*, 246 F.3d at 307. Hamilton is a two-minute drive or nine-minute walk from Baldwin, where each of the five controlled purchases took place. To make matters worse for Mr. Green, we found in *Burton* that uninterrupted travel from the site of a drug transaction to a residence suggests that the residence is the destination for the illegal proceeds of the transaction.[4] *Burton*, 288 F.3d at 104. This, too, supports a substantial basis for the magistrate's decision.

Perhaps most damning to Mr. Green are the averred facts regarding his interactions with the informant. If credible, they provided clear probable cause to arrest him on drug-related charges and, therefore, also supported a search of his home for "[b]ooks, records receipts, notes, [and] ledgers." App'x 45–46. After all, "[a] magistrate may issue a warrant relying primarily or in part upon the statements of a confidential informant, so long as the

---

[4]  Although it is fair for Mr. Green to point out that the record contains statements from anonymous sources suggesting that he attempted to keep drug activity away from his home, "attempted" is not a ringing endorsement of a fact, especially when it is directly undermined in the same record by his own actions. For example, on three occasions, Mr. Green took calls regarding drug transactions from Hamilton. Moreover, these same confidential sources also stated that Mr. Green kept the proceeds of his drug dealing at Hamilton, understood by those sources to be his home.

totality of the circumstances gives rise to probable cause." *Stearn*, 597 F.3d at 555. A magistrate may also credit statements from an anonymous informant whose personal credibility is unclear if their statements are "corroborated in significant part by independent police investigation." *Id.* at 556.

Here, at least one confidential source, the informant, purchased drugs five times from Mr. Green and his associate under police observation. Three of those purchases directly implicated Mr. Green. More than one source, including the informant, informed police that Mr. Green kept drug proceeds at Hamilton. Even setting aside information demonstrating the reliability of the anonymous sources (e.g., the informant's record of cooperation with law enforcement), other evidence in the affidavit suggests that these statements were accurate, including Mr. Green's prior drug manufacturing conviction, the statements made by the informant immediately before and after five controlled purchases, police observation of Mr. Green meeting with the informant and traveling directly from one controlled purchase to Hamilton, and Officer Sonney's informed assessment based on years of experience in narcotics investigations.

Indeed, "[i]f there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases." *Burton*, 288 F.3d at 103. And "[i]n the case of drug dealers . . . evidence of involvement in the drug trade is likely to be found where the dealers reside." *Whitner*, 219 F.3d at 297. This is the case because "evidence associated with drug dealing needs to be stored

9

somewhere, and . . . a dealer will have the opportunity to conceal it in his home." *Id.* at 298. The common-sense likelihood that drug dealers keep evidence of their trade where they reside, combined with Mr. Green's trek from Baldwin directly to Hamilton, additionally supported the magistrate's probable cause determination.

Under the totality of the circumstances, these factors surely created a "fair probability" that Mr. Green trafficked narcotics, *Miknevich*, 638 F.3d at 182, and a "sufficient nexus" with Hamilton to support probable cause. *Golson*, 743 F.3d at 54. Mr. Green has failed to show that the magistrate lacked a substantial basis for issuing the search warrant for the Hamilton residence. The District Court, therefore, did not err when it upheld the magistrate's probable cause determination.

**IV**

For the reasons discussed above, we will affirm.