PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1416
_____

UNITED STATES OF AMERICA

v.

COREY GOLSON,
                                        Appellant

_____

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 1-10-cr-00339-001)
District Judge: Honorable William W. Caldwell
_____

Argued November 7, 2013
_____

Before: GREENAWAY, JR., VANASKIE and ROTH,
*Circuit Judges*.

(Opinion Filed: February 11, 2014)

_____

OPINION

_____

Jeffrey A. Conrad, Esq. *ARGUED*
Clymer, Musser, Brown & Conrad
408 West Chestnut Street
Lancaster, PA 17603
*Attorney for Appellant*

Daryl F. Bloom, Esq. *ARGUED*
Office of United States Attorney
228 Walnut Street, P.O. Box 11754
Harrisburg, PA 17108-0000
*Attorney for Respondent*

GREENAWAY, JR., *Circuit Judge*.

This appeal stems from the controlled delivery of a parcel containing twenty pounds of marijuana (the "Parcel") to the residence of Defendant-Appellant Corey Golson ("Golson"), where upon acceptance, state and federal law enforcement agents conducted a search of Golson's home pursuant to an anticipatory search warrant (the "Anticipatory Warrant") issued by Pennsylvania Magisterial District Judge Mark Martin ("MDJ Martin"). There are two primary issues to resolve.

First, Rule 41(b) of the Federal Rules of Criminal Procedure mandates that either a federal judge or a judge of a state court of record must issue a warrant in a federal prosecution. Golson claims, among other things, that the

2

government violated Rule 41(b) because MDJ Martin was not a judge of a state court of record. In reviewing Golson's claim pursuant to a suppression motion, the United States District Court found that the Anticipatory Warrant was issued pursuant to an investigation under state law, which is not governed by the Federal Rules of Criminal Procedure. We will affirm pursuant to *United States v. Bedford*, 519 F.2d 650 (3d Cir. 1975).

Second, federal postal inspectors seized the Parcel for a period of four days prior to obtaining a warrant to open and search it. Since a prolonged seizure occurred, Golson claims the contents of the Parcel should be suppressed. The District Court found the seizure to be reasonable. We agree and will affirm.

# I.   BACKGROUND

## A.   Factual Background

On Wednesday, July 21, 2010, a postal inspector at the Phoenix branch of the United States Postal Inspection Service ("USPIS") intercepted the Parcel, which was being sent out of state, on suspicion of narcotics trafficking. The Parcel was sent from "M. Tubbs" at an address in Phoenix, Arizona to "Derek Brown" at 237 West Locust Street, Mechanicsburg, PA 17055.[1]

A Phoenix USPIS postal inspector deemed the package as suspicious because the return address was fictitious and non-deliverable. Additionally, based on his experience, drug

---

[1] The residence was later determined to be that of Golson.

3

traffickers often bring narcotics across the border from Mexico into Arizona, and then mail them to the east coast. (J.A. 250.)

Phoenix USPIS contacted postal inspector Joseph Corrado ("Inspector Corrado" or "Corrado") at USPIS's Harrisburg, PA branch, about their suspicions concerning the Parcel. Corrado agreed to investigate, and the Phoenix USPIS sent him the Parcel in Harrisburg.

Corrado received the Parcel the next morning (July 22, 2010). That same day, with the assistance of the Pennsylvania state police, USPIS conducted various name and address verifications and other database checks concerning the Parcel's addressee and destination address. Corrado determined that "Derek Brown" was not a person known to receive mail at the residence. Corrado testified that the use of a fictitious name is indicative of narcotics trafficking. (J.A. 235.)

Since Corrado was the "only one working narcotics in Harrisburg," (J.A. 237) he relied on state police to assist with the investigation. Corrado requested the use of the state police's trained narcotics canine, which was able to detect the presence of narcotics in the Parcel. With that information, Corrado requested that the state police's criminal investigation bureau reconnoiter at the Parcel's destination, and gather intelligence about its recipients.

Corrado then presented the foregoing facts to the U.S. Attorney's Office, who, in turn, decided to apply for a search warrant to open the Parcel. Later that day, Corrado sent Assistant U.S. Attorney Daryl Bloom ("AUSA Bloom") a draft affidavit in support of the search warrant.

The next day (July 23, 2010), Corrado was on pre-approved leave from work, and was scheduled to return to work on Monday, July 26. AUSA Bloom arranged for United States Magistrate Judge Smyser ("U.S.M.J. Smyser") to review a draft of the search warrant application ahead of Monday morning, so that it could be executed as soon as Corrado returned.

On Monday morning (July 26, 2010), Inspector Corrado and AUSA Bloom conferred with U.S.M.J. Smyser, Corrado swore to the truth of his affidavit, and a search warrant for the Parcel was issued. Within a half-hour of obtaining the warrant, Inspector Corrado returned to USPIS's Harrisburg office, and opened the Parcel. The Parcel contained approximately twenty pounds of marijuana.

Following this discovery, members of the USPIS, Pennsylvania State Police, and Cumberland County Drug Task Force, assembled into a team of approximately twelve (the "Controlled Delivery and Search Team" or the "Team") for the purpose of carrying out a controlled delivery of the Parcel.

Before conducting the controlled delivery, the Team reconstructed the Parcel. They replaced the twenty pounds of marijuana with a "representative sample" and sham material to represent the original weight of the Parcel. (J.A. 242.) In addition, the officers placed indicator equipment,

with GPS capability, into the Parcel to keep track of it, and to be alerted when the Parcel was opened.[2]

The same day, Pennsylvania State Trooper Brian Overcash ("Trooper Overcash"), one of the agents assisting with surveillance and intelligence gathering and a member of the Controlled Delivery and Search Team, obtained the Anticipatory Warrant from MDJ Martin. Corrado testified that the Anticipatory Warrant was obtained by Trooper Overcash to expedite delivery of the Parcel. (J.A. 260.) Trooper Overcash's affidavit in support of the warrant ("Overcash's Affidavit") stated in relevant part:

> [A] Federal Search and Seizure Warrant was executed on the parcel. The parcel contained approximately 20 pounds of suspected marijuana. The marijuana was field tested with positive results.
>
> [] It has been the experience of [Trooper Overcash], that the amount of marijuana seized, is of a quantity consistent with possession with intent to deliver. It has also been the experience of your Affiant that persons involved in the sale of Controlled Substances also have in their possession, or close proximity, other Controlled substances, paraphernalia, and records, proceeds associated with the sale of controlled substances.

---

[2] Corrado obtained a tracking warrant from U.S.M.J. Smyser on July 26 at 11:05 a.m. (J.A. 258.) The parties have not raised any issues with this warrant.

6

[] Your affiant requests that an Anticipatory Search Warrant be granted for the residence at 237 West Locust St, Mechanicsburg, PA. This warrant will only be executed pending a successful controlled delivery of the package. (Package taken inside residence). Additionally the package will transmit an audible beep to Officer's [sic] when the package is opened.

(J.A. 177.) Trooper Overcash's Affidavit did not specify that the twenty pounds of marijuana had been replaced by a trace amount of marijuana and sham material. Nevertheless, the Anticipatory Warrant authorized a search of the residence, upon completion of the delivery of the Parcel to the residence, and once the indicator equipment alerted the Controlled Delivery and Search Team that someone had opened the Parcel.

On the same day that MDJ Martin issued the Anticipatory Warrant, a USPIS Postal Inspector disguised as a letter carrier and wearing a wire, hand-delivered the reconstructed Parcel to the residence. At the time of delivery, Elijah Small ("Small") answered the door, and when the undercover inspector asked for Derek Brown, Small went to find him. Golson's son, Corey Jamal Golson ("CJG"), next appeared at the door. The undercover inspector announced to CJG, "I have a parcel here for Derek Brown. Are you Derek Brown?" (J.A. 52.) CJG replied, "Yes" (*id.* at 52) and proceeded to sign for the Parcel as Derek Brown. CJG then took the Parcel into the residence.

Approximately thirty minutes later, the indicator equipment alerted the Controlled Delivery and Search Team

7

that the Parcel was opened. Both Pennsylvania state law enforcement agents, and federal agents—all members of the Team—entered the residence. They found CJG in the kitchen next to the Parcel, and Small and Charles Richardson on the second floor of the residence. Pennsylvania state law enforcement issued *Miranda* rights to all three individuals and took them into their custody.

Acting on the Anticipatory Warrant, the Controlled Delivery and Search Team searched all three floors of Golson's residence. The following items were seized from CJG's bedroom: a handgun, a sawed-off /short-barreled shotgun, and ammunition. (J.A. 179-80.) The Team found the following items in the recording studio room adjacent to CJG's bedroom: ammunition, including hollow point bullets, 704 packets of heroin packaged for distribution, forty grams of raw heroin, a cutting agent, packaging material consistent with drug distribution, a heat sealer, heat sealable bags, a scale, rubber examination gloves, and masks. (*Id.*) In the second floor bedroom, determined to be that of Golson, the Team found the following items: a handgun, a shotgun, 100 packets of heroin, rolling papers, and a marijuana grinder. (*Id.*) The heroin and marijuana field-tested positive. The Pennsylvania State Police took custody of all the seized items.

The record reflects that the Parcel was intended for Golson, and although CJG represented himself as Derek Brown to the undercover inspector, he did so only under Golson's instruction. (J.A. 117.)

Ultimately, the U.S. government brought charges against CJG, although, initially there was a state prosecution. CJG cooperated with law enforcement by agreeing to testify

8

against Golson in the instant case. CJG received a 78-month term of imprisonment as a result of his cooperation.[3]

## B.    Procedural Background

Golson entered a plea of not guilty on a three-count indictment charging him with: (1) criminal conspiracy to distribute and possess with intent to distribute marijuana and heroin, in violation of 21 U.S.C. § 846; (2) distribution and possession with intent to distribute marijuana and heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(1)(D) and 18 U.S.C. § 2; and (3) possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), (c)(1)(B)(I).

Golson filed a motion to suppress the seizure of evidence allegedly obtained through two separate Fourth Amendment violations. First, Golson argues that the search of the residence: (1) violated Rule 41(b) because MDJ Martin, who is not a federal judge or a judge of a state court of record, issued the Anticipatory Warrant; and (2) was unreasonable under the Fourth Amendment because the warrant was obtained based on Trooper Overcash's Affidavit that contained misleading material facts. Second, Golson argues that because Inspector Corrado retained possession of the Parcel for four days before seeking a warrant to open it, the seizure was unreasonable.

After the suppression motion was denied, Golson entered a conditional guilty plea to the three-count indictment

---

[3] The Commonwealth of Pennsylvania also brought charges against Small and Richardson.

9

pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure. Under the conditional plea, Golson reserved the right to appeal the adverse determinations of his motion to suppress.

The District Court sentenced Golson to 161 months of imprisonment, three years of supervised release, and issued an assessment fee of $300.00 and a fine of $1,000.00. Golson's appeal of the District Court's denial of his motion for suppression is now before us.

## II.    JURISDICTION

The District Court had jurisdiction to hear this case pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## III.    ANALYSIS

### A.    Suppression of Evidence Obtained Pursuant to the Anticipatory Warrant

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. "It remains a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, [i.e., without a warrant,] are per se unreasonable under the Fourth Amendment." *California v. Acevedo*, 500 U.S. 565, 580 (1991) (internal quotation marks and citations omitted); *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002) ("Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause.").

"[T]he ultimate measure of the constitutionality of a governmental search is reasonableness[,]" *Maryland v. King,* 133 S. Ct. 1958, 1969 (2013) (internal quotation marks omitted); however, absent special circumstances, law enforcement agents must obtain a warrant from a neutral magistrate based on probable cause. *See id.*; *Treasury Employees v. Von Raab*, 489 U.S. 656, 667 (1989). For federal prosecutorial purposes, a valid warrant must also comply with the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 1(a).

Golson contends that the District Court erred in failing to suppress the evidence obtained pursuant to the Anticipatory Warrant. In support of this contention, Golson reiterates his arguments from the original suppression hearing. First, the warrant is invalid because the government failed to have a federal judge or a judge of a Pennsylvania court of record issue the warrant, as required by Rule 41(b). Second, the Anticipatory Warrant is invalid because the warrant application contained a material misrepresentation of fact. Because both of these arguments lack merit, we will affirm the District Court's denial of Golson's motion to suppress.

### a. The Anticipatory Warrant is not Subject to Rule 41(b)

We begin with Golson's first argument that the government violated Rule 41(b) when it obtained the Anticipatory Warrant from MDJ Martin. As a threshold matter, we must consider whether Rule 41(b) is applicable to the Anticipatory Warrant, and if so, whether MDJ Martin is a judge of a state court of record. Fed. R. Crim. P. 41(b). Because these questions require the interpretation of Rule

11

41(b), we exercise plenary review. *United States v. Toliver*, 330 F.3d 607, 610 (3d Cir. 2003). For the reasons set forth below, we find that the Anticipatory Warrant is not subject to the mandates of Rule 41(b); as such, the dispute as to whether MDJ Martin is a judge of a state court of record is moot.[4]

To put this dispute in context, Rule 41(b) grants the authority to issue search warrants to federal judges and judges of state courts of record. Fed. R. Crim. P. 41(b).[5] In a federal prosecution, Rule 41(b) will apply, by its own terms, to a search warrant made "[a]t the request of a federal law enforcement officer or an attorney for the [federal] government[.]" Fed. R. Crim. P. 41. In the Third Circuit, Rule 41(b) also applies to warrants made at the request of a non-federal law enforcement officer or non-government attorney, if the federal court reviewing the warrant deems the

---

[4] Parenthetically, MDJ Martin is not a judge of a state court of record. *See* 42 Pa. Const. Stat. §§ 301, 321 (2006).

[5] Specifically, Rule 41(b) provides that:

> [a]t the request of a federal law enforcement officer or an attorney for the government: (1) a magistrate judge with authority in the district— or if none is reasonably available, a judge of a state court of record in the district—has authority to issue a warrant to search for and seize a person or property located within the district.

Fed. R. Crim. P. 41.

search to be "federal" in character.[6] *See United States v. Bedford*, 519 F.2d 650, 654 n.1 (3d Cir. 1975). Indeed "[i]f the search is deemed federal in character, the legality of the search would be conditioned upon a finding that the warrant satisfied federal constitutional requirements *and* certain provisions of Fed. R. Crim. P. 41 designed to protect the integrity of the federal courts or to govern the conduct of federal officers." *Id.* at 656 n.1 (internal quotation marks and citations omitted) (emphasis added).

On the other hand, Rule 41(b) will not apply to a search warrant made at the request of someone other than a

---

[6] The Fourth, Eighth, and Tenth Circuits similarly interpret Rule 41(b) to apply where a search made pursuant to a warrant is "federal" in character. *See United States v. Johnson*, 451 F.2d 1321, 1322 (4th Cir. 1971); *United States v. MacConnell*, 868 F.2d 281, 283 (8th Cir. 1989); *United States v. McCain*, 677 F.2d 657, 662 (8th Cir. 1982) ("Rule 41 applies only where a warrant is sought by a federal law enforcement officer or where the search can otherwise be characterized as federal in character"); *United States v. Bookout*, 810 F.2d 965, 967 (10th Cir. 1987).

On the other hand, the Fifth Circuit reads Rule 41(b) literally, and requires compliance with the mandates of Rule 41 only when a warrant is made "[a]t the request of a federal law enforcement officer or an attorney for the government." *United States v. McKeever*, 905 F.2d 829, 832 (5th Cir. 1990) (citing Fed. R. Crim. P. 41(b)(1)).

Under either approach, Rule 41 does not apply to the Anticipatory Warrant here.

13

federal law enforcement officer or government attorney when the resulting search is "state" in character, even if the fruits of that warrant are later entered into evidence in a federal prosecution. *Id.* at 653-54. In that situation, "the warrant, assuming proper issuance under state law, need only conform to federal constitutional requirements."[7] *Bedford*, 519 F.2d at 654 n.1.

Whether a search can be characterized as either state or federal is a fact-intensive inquiry that looks at "the extent [to which] federal officers were involved in the search and seizure." *Id.* at 654 n.1 (citing *Lustig v. United States*, 338 U.S. 74, 81 (1949); *Byars v. United States*, 273 U.S. 28, 32 (1927) ("[T]he court must be vigilant to scrutinize the attendant facts with an eye to detect and a hand to prevent violations of the Constitution by circuitous and indirect methods.")).

To determine the warrant's validity, we must focus on the facts regarding the character of the search in their totality. *Bedford,* 519 F.2d at 654 n.1. In *Bedford*, although agents from both the state and federal government assisted in executing the search warrant, we deemed the search state in character based on assessing the following eight factors:

> (1) the warrant was issued under state law and directed to state officers; (2) the warrant was predicated on probable violation of state

---

[7] Pennsylvania law grants MDJ Martin the authority to issue search warrants, and the parties do not otherwise contest that the warrant is invalid under state law. *See* 42 Pa. Const. Stat. § 1515 (2006).

narcotics laws; (3) there was no evidence of bad faith on the part of either the state or federal officers; (4) federal agents did not assist in the obtaining of the warrant; (5) there was no evidence that federal agents instigated or supervised the search; (6) defendant was initially arrested by local police officers; (7) the majority of the evidence was found by local officers; and (8) the products of the search, placed in the custody of local police, formed the basis of a state prosecution.

*Id.* at 654. The *Bedford* Court was "more inclined to view the search as a 'state' undertaking in which federal agents participated solely to supply additional manpower for the execution of the warrant." *Id.* at 654 n.1.

Applying the factors set forth in *Bedford*, we find that the search of Golson's residence was state in character. The Anticipatory Warrant was issued by MDJ Martin upon state Trooper Overcash's application (factor 1); the Anticipatory Warrant indicated that there was a violation of Pennsylvania's Controlled Substance, Drug Device and Cosmetic Act, 35 Pa. Cons. Stat. § 780-113 (2004) (factor 2); Golson failed to show bad faith of federal or state officers in obtaining the Anticipatory Warrant in state court (factor 3); while federal officers may have assisted in laying the groundwork for the Anticipatory Warrant, Trooper Overcash championed the effort to obtain the warrant (factor 4); there is no indication that federal agents supervised the search (factor 5); and lastly, despite federal and state officers working together during the search of the residence, the seized evidence was placed into the custody of the state police (factors 7 and 8). In consideration of all the above factors, we agree with the

15

District Court that the search was state in character. Based on this finding, the Anticipatory Warrant is not subject to Rule 41 scrutiny.

**b.** *There was a Substantial Basis for MDJ Martin to Find Probable Cause to Issue the Anticipatory Warrant*

Golson's second argument regarding the Anticipatory Warrant is that Trooper Overcash's Affidavit in support of the Anticipatory Warrant cannot sustain a finding of probable cause.

A reviewing court may not conduct a *de novo* review of a probable cause determination. *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993). Here, we must apply the same deferential standard as the District Court in reviewing MDJ Martin's initial probable cause determination. *Conley*, 4 F.3d at 1205. Our duty is "to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed." *Id.* at 1205 (alterations in original) (internal quotation marks omitted). In making a probable cause determination, the judge issuing the warrant looks at whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place," *Gates*, 462 U.S. 238, and thus, here, we must "uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found." *Conley*, 4 F.3d at 1205; *see also United States v. Stearn*, 598 F.3d 540, 554 (3d Cir. 2009).

Here, Golson submits that Trooper Overcash's Affidavit, (1) omits the fact that law enforcement agents replaced the twenty pounds of marijuana found in the Parcel with trace amounts of marijuana, and (2) "lacks a specific

16

triggering condition sufficiently specific to comply with [all the warrant requirements.]" (Appellant Br. 16-17.) Both of these arguments fail.

First, MDJ Martin's finding of probable cause is not undermined by Trooper Overcash's omission from his affidavit that the Parcel would contain only a trace amount of marijuana at delivery. As discussed below, even when we "remove the falsehood created by [the] omission by supplying the omitted information to the original affidavit[,]" *U.S. v. Yusuf*, 461 F.3d 374, 384 (3d Cir. 2006) (internal quotation marks omitted), a substantial basis existed for MDJ Martin to find probable cause. *See Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (reasoning that if the affidavit excised of offending inaccuracies, and including omitted facts, has probable cause, then "even if there had not been omissions and misrepresentation[s]," the warrant would have been issued).

Golson's second argument, that the Anticipatory Warrant "lacks a specific triggering condition sufficiently specific to comply with [warrant requirements]" also fails. (Appellant Br. 17.) An anticipatory search warrant is "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." *United States v. Grubbs*, 547 U.S. 90, 94 (2006) (internal quotation marks and citations omitted).

For an anticipatory warrant based on a triggering event, the Supreme Court requires satisfaction of two "prerequisites of probability" to comply with the Fourth Amendment's probable cause requirement. *Grubbs*, 547 U.S. at 96. The first prerequisite of probability requires that,

17

"based on facts existing when the warrant is issued[,]" there is "probable cause to believe the contraband, which is not yet at the place to be searched, will be there when the warrant is executed." *United States v. Loy*, 191 F.3d 360, 365 (3d Cir. 1999); *see also Grubbs*, 547 U.S. at 96-97 ("*[I]f* the triggering condition occurs there is a fair probability that contraband or evidence of a crime will be found in a particular place[.]") (internal quotation marks and citation omitted). This requirement ensures that there is a sufficient nexus between the contraband to be seized and the place to be searched. *Grubbs*, 547 U.S. at 96.

The second prerequisite of probability is that there is probable cause to believe that the triggering event will actually occur. *Grubbs*, 547 U.S. at 97. "The supporting affidavit must provide the [judge] with sufficient information to evaluate both aspects of the probable-cause determination." *Id.* at 97.

Here, the first probable cause requirement is met. In addition to the trace amount of marijuana certain to be present in the residence at the time of the warrant's execution, there was also a fair probability that "other controlled substances, paraphernalia, and records . . . associated with the sale of controlled substances" would be present. (J.A. 177); *see Stearn,* 597 F.3d at 559-60 (stating the nexus may be established by "the conclusions of experienced officers regarding where evidence of a crime is likely to be found[.]"); *see, e.g., Grubbs*, 547 U.S. at 97 (finding the successful controlled delivery of contraband consisting of a videotape of child pornography would "plainly establish" probable cause for the search).

18

Because Trooper Overcash possessed the Parcel containing trace amounts of marijuana and had definite plans to deliver the Parcel to the residence, the second probable cause requirement is also met, as there was a fair probability that the triggering event, i.e., the Parcel's entrance into the residence after a successful controlled delivery and the subsequent alert of the indicator equipment, would actually occur.[8] *See Grubbs,* 547 U.S. at 97. In *Grubbs*, the Supreme Court found that the successful delivery of contraband consisting of videotapes of child pornography to defendant's residence by an undercover agent would satisfy the second probable cause requirement because, while it was "possible that [defendant] could have refused delivery of the videotape he had ordered, that was unlikely." *Id.* at 97. Similarly, here, while it was possible the occupants of the residence would refuse delivery of the Parcel, or accept delivery but leave the Parcel unopened, it was more probable they would accept and open.

## B.     Suppression of Evidence Obtained After Four-Day Warrantless Seizure

Golson's second argument on appeal is that the District Court erred in finding the four-day warrantless seizure of the Parcel to be reasonable.[9] (Appellant Br. 21.)

---

[8] Trooper Overcash's Affidavit states: "This warrant will only be executed pending a successful controlled delivery of the package. (Package taken inside residence). Additionally the package will transmit an audible beep to Officer's [sic] when the package is opened." (J.A. 177.)

[9] The government argues for the first time on appeal that Golson lacks standing to challenge the search of the Parcel

The District Court disagreed, and held that the "four-day

because he has no privacy interest in it; Golson neither sent the parcel nor was it addressed to him. The government evokes the general principles of Fourth Amendment standing established in *United States v. Padilla*, 508 U.S. 77 (1993), and *Rakas v. Illinois*, 439 U.S. 128, 143 (1978), to support this argument. However, these cases cannot overcome or conflict with our precedent that the government may not raise a Fourth Amendment standing argument for the first time on appeal. *United States v. Stearn,* 597 F.3d 540, 552 n.11 (3d Cir. 2010). "The 'standing' inquiry, in the Fourth Amendment context, is shorthand for the determination of whether a litigant's Fourth Amendment rights have been implicated." *United States v. Mosley*, 454 F.3d 249, 253 n.5 (2006). As we previously explained:

> Fourth Amendment standing is one element of a Fourth Amendment claim, and does not implicate federal jurisdiction. Consequently, standing can be conceded by the government, and it is also subject to the ordinary rule that an argument not raised in the district court is waived on appeal.

*Id.* at 552 n.11 (internal citations and quotation marks omitted); *see, e.g.*, *United States v. Navedo*, 694 F.3d 463, 478 n.3 (3d Cir. 2012) ("[W]hether [defendant] possessed a reasonable expectation of privacy—a necessary predicate to his invocation of the exclusionary rule—might have presented a close question in this case. But the Government waived this standing argument by failing to raise it in the District Court.") (internal citations omitted).

delay due to the investigation, scheduled leave, and the weekend is reasonable in the present case." (J.A. 6.) We review the District Court's factual findings for clear error, and exercise plenary review over the District Court's determination that the seizure did not violate the Fourth Amendment. *United States v. Johnson*, 592 F.3d 442, 447 (3d Cir. 2010) (citing *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002); *United States v. Bonner*, 363 F.3d 213, 215 (3d Cir. 2004)). We agree that the four-day seizure was reasonable.

Postal authorities may seize and detain mailed items for a reasonable amount of time, if they have a reasonable suspicion of criminal activity.[10] *United States v. Van Leeuwen,* 397 U.S. 249, 251-52 (1970). We look at the totality of the circumstances in determining whether the length of the detention was reasonable. *See Id.* at 252 ("The nature and weight of the packages, the fictitious return address, and the British Columbia license plates of respondent who made the mailings in this border town certainly justified

---

[10] Golson does not dispute that the detention of the Parcel was based on reasonable suspicion, nor could he, because reasonable suspicion to detain the Parcel is supported by the record: the Parcel's return address was fictitious and non-deliverable, and based on the past experience of the USPIS inspectors involved, narcotics are often brought across the border from Mexico into Arizona and then mailed to the east coast. Moreover, the addressee, Derek Brown, was not a person known to receive mail at the address listed, which is one possible indicia of narcotics trafficking.

detention, without a warrant, while an investigation was made.").

Here, the length of the delay was reasonable because it was due to the investigation, scheduled leave, and the weekend, when postal operations, in ordinary course, cease or slow down considerably. *See United States v Lux*, 905 F.2d 1379 (10th Cir. 1990) (detaining a package for approximately a day and a half, when one of those days was a Sunday, was reasonable); *United States v. Mayomi*, 873 F.2d 1049 (7th Cir. 1989) (detaining letters over a weekend for the sole purpose of subjecting them to a canine sniff test was not unreasonable); *United States v. Gill*, 280 F.3d 923 (9th Cir. 2002) (six-day delay where postal worker who was on leave for three days, was not unreasonable). Therefore, Golson's argument is without merit and we will affirm the District Court's finding that the Parcel was not unreasonably seized.

## IV.    CONCLUSION

For the reasons discussed above, we will affirm the District Court's denial of Golson's motion to suppress evidence discovered in Golson's residence, and in the Parcel.