NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4577
_____

UNITED STATES OF AMERICA

v.

ERIC CHAMBERS,
                                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 12-cr-00102)
District Judge:  Hon. William W. Caldwell
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 21, 2015

Before:   FISHER, JORDAN, and GREENAWAY, JR., *Circuit Judges*.

(Filed: January 22, 2015)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Eric Chambers appeals both his conviction in the United States District Court for the Middle District of Pennsylvania for possession of a firearm by a convicted felon and the resulting 200-month prison sentence. We will affirm.

## I.      Background

In September 2011, Chambers was allegedly involved in an attempted homicide in Harrisburg, Pennsylvania. After the victim identified Chambers as the shooter, police sought and obtained a warrant for his arrest. On January 9, 2012, the Harrisburg police received an anonymous tip that Chambers was in nearby Swatara Township.[1] Investigation determined that Chambers was at the Red Roof Inn on Eisenhower Boulevard in Room 151, which had been rented by Takia Jones, one of Chambers's friends. Officers arrived at the scene, summoned Chambers out of the hotel, and he exited without incident. At the time of the arrest, the only other occupant of Room 151 was Tanisha Washington, another of Chambers's friends. Harrisburg police officers then sought and obtained a search warrant for the hotel room and Chambers's car. In the underlying affidavit, officers averred that the victim of the 2011 Harrisburg shooting had

---

[1] Although Chambers says that the Swatara Police Department received the tip, a search warrant affidavit states that the "Harrisburg Police received information" about Chambers. (*Compare* Opening Br. at 8 (citing App. at 24) *with* App. at 23.) The District Court's opinion on Chambers's suppression motion also states that "a confidential informant told Harrisburg police that Defendant was in a hotel room in Swatara Township." (App. at 28.) Elsewhere, however, the record indicates that "Corporal Milsteen" of the Swatara Police Department "informed D platoon of an intelligence call," (App. at 24) and that Officer Scott Gibson of the Swatara Police Department testified at trial that he was "told of an intelligence call" regarding Chambers. (App. at 81.) Ultimately, the identity of the police department that received the tip is irrelevant to the issues before us.

identified Chambers as the shooter, that there was an active warrant for his arrest, and that Chambers had been arrested at the Red Roof Inn. A fair implication of the affidavit was that the gun had never been recovered.

During the ensuing search of the hotel room, the police located a Ruger .40 caliber semi-automatic firearm in a bag of potato chips in a trash can. The gun was loaded with nine rounds of ammunition in the magazine and one round of ammunition in the chamber. The police also recovered from the trash can another magazine loaded with ten rounds of ammunition. A holster fitting the gun was located in Chambers's car, which had been parked outside the hotel room.

While in prison after his arrest, Chambers made a number of recorded phone calls to his girlfriend Kenya Scott, in which he made coded references to the gun and his unsuccessful attempts to hide it after the police arrived. A grand jury returned an indictment charging Chambers with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922.[2] Chambers filed a motion to suppress the firearm. The District Court denied that motion without a hearing, and Chambers sought reconsideration, which was also denied. Following a two-day jury trial, he was convicted. He then filed a motion for judgment of acquittal, challenging the sufficiency of the evidence adduced at trial. The District Court denied that motion too. After conducting a sentencing hearing and concluding that the Armed Career Criminal Act enhancement applied, the Court sentenced Chambers to 200 months in prison.

_____

[2] The indictment also charged Chambers with one count of receiving stolen firearms, but the government dismissed that charge prior to trial.

3

Chambers timely appealed, challenging the denial of his motion to suppress and motion for judgment of acquittal, and the sentence imposed.

## II. Discussion[3]

### A. *The Motion to Suppress*

Chambers argues that the District Court improperly denied his motion to suppress because there was insufficient probable cause to support the warrant, the police acted outside their authority in obtaining the warrant, and the Court erred in denying an evidentiary hearing on the motion. Those arguments are unpersuasive.

A search warrant is valid if supported by probable cause that particular contraband or evidence will be found in a particular place. *United States v. Golson*, 743 F.3d 44, 53 (3d Cir. 2014). A court must "uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found." *United States* v. *Conley,* 4 F.3d 1200, 1205 (3d Cir. 1993). Here, although the information contained in the affidavit was thin, the magistrate was presented with sufficient evidence to conclude that there was a fair

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review the denial of a motion to suppress for clear error as to the underlying facts, but exercise plenary review as to the District Court's legal conclusions. *United States v. Kennedy*, 638 F.3d 159, 163 (3d Cir. 2011). We review the denial of a hearing on a suppression motion for an abuse of discretion and will reverse "only in rare circumstances." *United States v. Hines*, 628 F.3d 101, 104-05 (3d Cir. 2010). We review *de novo* the denial of a motion for acquittal, viewing the evidence in the light most favorable to the government, and we will sustain the verdict if any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *United States v. Freeman*, 763 F.3d 322, 343 (3d Cir. 2014); *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). Finally, we exercise plenary review over a challenge to the application of the Armed Career Criminal Act – the sole sentencing issue raised on appeal. *United States v. Jones*, 332 F.3d 688, 690-91 (3d Cir. 2003).

probability that the weapon related to the September 2011 shooting would be found in Room 151 – namely, that Chambers had shot another man with a firearm that had never been recovered and it was reasonable to assume that he would have kept the firearm with him. *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993) (search warrant for residence seeking firearms was supported by probable cause because "firearms, are … the type[] of evidence likely to be kept in a suspect's residence"); *United States v. Steeves*, 525 F.2d 33, 38 (8th Cir. 1975) ("[P]eople who own pistols generally keep them at home or on their persons"); *Bastida v. Henderson*, 487 F.2d 860, 863 (5th Cir. 1973) ("A very likely place to find [the pistols] would either be on the persons of the assailants or about the premises where they lived.").

Second, Chambers argues that the police exceeded their authority under the Municipal Police Jurisdiction Act, 42 Pa. Cons. Stat. Ann. § 8953, thereby invalidating the search warrant, because the shooting occurred in Harrisburg, was investigated by Harrisburg police, and Harrisburg police obtained the search warrant, but the warrant was approved by a Swatara magistrate and executed in Swatara Township. Even if Chambers's interpretation of the Municipal Police Jurisdiction Act were correct, however, he does not explain how a violation of state law would be relevant to the federal constitutional analysis required here. *Cf. Virginia v. Moore*, 553 U.S. 164, 176-78 (2008) (holding that state law is immaterial for Fourth Amendment search analysis and refusing to suppress evidence obtained illegally under state law after warrantless arrest because "the arrest rules that the officers violated were those of state law alone, and as we have just concluded, it is not the province of the Fourth Amendment to enforce state law. That

5

Amendment does not require the exclusion of evidence obtained from a constitutionally permissible arrest.").

Finally, Chambers's argument that the District Court erred in not holding a hearing on his suppression motion fails because – contrary to his protestations to the contrary – there were no material facts in dispute. *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996) (to warrant a suppression hearing, a defendant's moving papers must demonstrate a colorable claim for relief – that is, "[t]here must be issues of fact material to the resolution of defendant's constitutional claim"). The questions of "material fact" to which Chambers points – who else had access to Room 151, which police force received the anonymous tip, and the contents of that tip – relate primarily to the sufficiency of evidence at trial, but do not undermine the fair probability that the weapon used in the attempted homicide would be located in the hotel room.

### B. *The Motion for a Judgment of Acquittal*

Chambers's argument that there was insufficient evidence to establish constructive possession of the handgun and thus to convict him also fails. Chambers says that the evidence shows, at most, mere proximity to the gun, and he notes that his nephew and another man named "Mighty" had been in the room at some earlier point. But, there was more than mere proximity in this case.

"'A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.'" *United States v. Blackston*, 940 F. 2d 877, 883 (3d Cir. 1991) (quoting Black's Law

6

Dictionary 1047 (5th ed. 1979)). While it is true that dominion and control are not established by mere proximity or mere association with a person who controls the item, *id.*, the government introduced evidence tying Chambers to the weapon. The gun was found in an empty bag of potato chips purchased for Chambers and in a hotel room that Chambers occupied. Ms. Jones, the woman who rented the room, testified that she bought the bag of chips for Chambers. The other occupant of the room at the time of the arrest, Ms. Washington, is not suggested by anyone to have possessed the gun, and both Ms. Washington and Ms. Jones testified under oath that neither the gun nor the holster belonged to them. Chambers's nephew also testified that the gun was not his. Most, significantly, the government introduced recorded phone conversations in which Chambers referred to the gun as "the toy," stating that he had it in the room, that it was listed on the inventory slip, that he was arraigned and charged because of "the toy," and that he attempted to hide it but that the police found it. The government also introduced a holster that had been found in Chambers's car and that fit the gun. Viewing the evidence in the light most favorable to the government, a rational trier of fact could certainly have found that Chambers constructively possessed the gun. *See United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). Thus, the District Court properly denied Chambers's motion for a judgment of acquittal.

C. *The Legality of Chambers's Sentence*

Chambers challenges the application of the Armed Career Criminal Act enhancement in his case, which resulted in a 15-year mandatory minimum term of imprisonment. He advances three arguments: (1) he did not have three prior "serious"

7

drug convictions; (2) the predicate offenses included offenses more than 15 years old; and (3) the facts giving rise to the Armed Career Criminal Act enhancement should have been submitted to a jury. All three are meritless.

"The Armed Career Criminal Act ... provides that a defendant convicted of possession of a firearm by a convicted felon, in violation of [18 U.S.C.] § 922(g), is subject to a mandatory sentence of 15 years of imprisonment if the defendant has three prior convictions 'for a violent felony or a serious drug offense.'" *James v. United States*, 550 U.S. 192, 195 (2007) (quoting 18 U.S.C. § 924(e)(1)). The Act defines a serious drug offense as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance ... for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii); *accord United States v. Gibbs*, 656 F.3d 180, 182 (3d Cir. 2011).

Here, the District Court determined that Chambers had three serious drug convictions, namely two prior convictions for possession with the intent to deliver crack cocaine in 1998 and one conviction for the unlawful delivery of crack cocaine in 1999. Under Pennsylvania law, possession with the intent to deliver crack cocaine and unlawful delivery of crack cocaine are punishable by a maximum term of imprisonment of ten years. 35 Pa. Cons. Stat. Ann. § 780-113(f)(1.1). Those convictions are thus "serious" drug offenses under 18 U.S.C. § 924(e). Chambers argues that because the convictions involved small drug quantities and because he received relatively short sentences, they do not meet the "common sense understanding" of "serious." That argument is foreclosed

8

by the unambiguous text of the statute, which provides the definition we must apply. *United States v. Pawlowski*, 682 F.3d 205, 211 (3d Cir. 2012) ("Where the language is plain and unambiguous, 'the sole function of the court is to enforce it according to its terms.'" (quoting *United States v. Sherman*, 150 F.3d 306, 313 (3d Cir. 1998))). Accordingly, the District Court properly concluded that the Armed Career Criminal Act enhancement applies.

Chambers also argues that two of his convictions are outside the 15-year look-back period for criminal history and thus should not have been used to calculate his criminal history category score. He was released from the initial prison term on each of those offenses more than 15 years ago, but because parole was revoked on both offenses, his re-incarceration extended into the 15-year look-back period. U.S.S.G. § 4A1.1, App. Note 1; U.S.S.G. § 4A1.2(e).

Finally, Chambers's argument that the jury, rather than the District Court, should have found facts relating to his prior convictions for sentencing purposes is undermined by controlling precedent. In *Apprendi v. New Jersey*, the Supreme Court held that "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000) (emphasis added); *see also Almendarez-Torres v. United States*, 523 U.S. 224, 246-47 (1998) (prior conviction that increases maximum penalty need not be treated as element of offense and proven to a jury); *United States v. Blair*, 734 F.3d 218, 227 (3d Cir. 2013) ("*Alleyne* do[es] nothing to

9

restrict the established exception under *Almendarez-Torres* that allows judges to consider prior convictions.").  The Court was thus fully empowered to make the findings it did.

## III.    Conclusion

For the foregoing reasons, we will affirm the judgment of conviction of the District Court.