**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2108
_____

UNITED STATES OF AMERICA

v.

DAVID TORRES,
                                  Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 3-20-cr-00181-001)
District Judge: Honorable Robert D. Mariani
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
January 18, 2023
_____

Before: AMBRO, PORTER, and FREEMAN,
*Circuit Judges*.

(Filed: January 20, 2023)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

PORTER, *Circuit Judge*.

David Torres pleaded guilty to charges of possession with intent to distribute 40 grams or more of fentanyl, for which the court sentenced him to 164 months of imprisonment. His guilty plea was conditional, reserving his right to appeal the denial of his motion to suppress evidence and withdraw his guilty plea should he prevail. For the reasons that follow, we will affirm the District Court.

I

An investigation conducted by the Pennsylvania State Police, Wilkes-Barre City Police, and Luzerne County Drug Task Force identified Torres as a suspected drug trafficker. *Id.* Law enforcement began monitoring 66 Church Street, where Torres stayed, and developed at least one confidential informant (CI) who aided in their inquiries.

Through their use of the CI, police arranged two controlled buys of cocaine and heroin/fentanyl within a span of six days in December 2019. In each instance, the CI called Torres, requested the narcotics, and arranged a time and place to meet. In each instance, Torres was observed by law enforcement leaving 66 Church Street and driving a rented Nissan Altima to the meeting point. Both times, he drove directly from 66 Church Street to the meeting point and didn't make any stops along the way. *Id.* Law enforcement ensured that the CI did not enter the meeting point with any contraband hidden on his/her person, and after each meeting with Torres, the CI returned with narcotics purchased from Torres.

Based on these interactions, the police obtained a search warrant for 66 Church Street. A search was executed, yielding fentanyl, cocaine, marijuana, a handgun, a bulletproof vest, a digital scale, drug-cutting agents, and drug-packaging materials. Following his federal indictment, Torres moved to suppress the evidence obtained from the residential search warrant. The District Court denied the motion, Torres pleaded guilty (preserving his right to challenge the denial on appeal), he was sentenced, and this timely appeal followed.

## II

We review the District Court's denial of a motion to suppress for clear error as to the underlying factual findings, and we review of the District Court's application of the law to those facts de novo. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002). When considering the acts of a magistrate in issuing a search warrant, "our role is not to make our own assessment as to whether probable cause existed" but "to determine only whether the affidavit provides a sufficient basis for the decision the magistrate judge actually made." *United States v. Jones*, 994 F.2d 1051, 1057 (3d Cir. 1993).

## III

Torres contends that the warrant to search the house at 66 Church Street was unsupported by probable cause because the drug deals were not conducted at that property. Therefore, he argues, "there was an insufficient nexus between the alleged illegal activity and said property." Appellant's Br. 4.

Torres provides the correct rule. Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place."

3

*United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). A magistrate is to assess, within the totality of the circumstances, whether an affidavit is supported by probable cause. *Miknevich*, 638 F.3d at 184. In particular, there must be "a sufficient nexus between the contraband to be seized and the place to be searched." *United States v. Golson*, 743 F.3d 44, 54 (3d Cir. 2014). On appeal, a reviewing court reads the affidavit "in its entirety and in a common sense, nontechnical manner." *Miknevich*, 648 F.3d at 182. If it determines that a substantial basis exists to support the magistrate's finding, the reviewing court must uphold that finding. *Id.*

Torres' application of this rule to the facts of his case demands a much tighter nexus than our case law requires. *See United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) (collecting cases). "Direct evidence linking the place to be searched to the crime is not required for the issuance of a search warrant." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001). As the government rightly notes, "[i]f there is probable cause to believe that someone committed a crime, then the likelihood that the person's residence contains evidence of the crime increases." *Burton*, 288 F.3d at 103; *see* Appellee's Br. 20. And "[i]n the case of drug dealers . . . evidence of involvement in the drug trade is likely to be found where the dealers reside." *United States v. Whitner*, 219 F.3d 289, 297–298 (3d Cir. 2000)). Indeed, "evidence associated with drug dealing needs to be stored somewhere, and . . . a dealer will have the opportunity to conceal it in his home." *Whitner*, 219 F.3d at 298.

Contrary to Torres' arguments, when an individual is suspected of dealing narcotics, probable cause to search his home does not demand a showing that he deals

4

those narcotics *at* his home. The common-sense likelihood that drug dealers keep evidence of their trade where they reside, combined with Torres's twice-observed trek from 66 Church Street directly to the meeting point with the CI, was sufficient to establish probable cause.

Torres' efforts to distinguish these cases are unavailing. His discussions of *Burton* and *Whitner* suggest, without squarely asserting, that the fact that 66 Church Street was not legally titled in his name destroys probable cause. Appellant's Br. at 8, 9 (citing *Burton*, 288 F.3d at 104; *Whitner*, 219 F.3d at 298). But not even the language that he cites supports that conclusion. *Burton*'s required showings include merely "that the place to be searched *is possessed by*, or the domicile of, the dealer." *Burton*, 288 F.3d at 104 (emphasis added). Based on law enforcement's surveillance, Torres appeared to be in possession of the property, using it as a base for his drug operations at least over the course of the week in question.

Even were he not in possession of the property, it is well established that when an individual is otherwise suspected of trading in narcotics, his comings-and-goings from a property further support a finding of probable cause to search that property. *See, e.g.*, *United States v. Stearn*, 597 F.3d 540, 557 (3d Cir. 2000) (noting that a property "appeared to be a focal point of [defendants'] movements," supporting probable cause). Here, Torres not only seemed to possess the property but left it immediately after each call from the CI to make the controlled-buys orchestrated by police, making no stops along the way. That surely created a "fair probability" that Torres brought the narcotics from 66 Church Street and a "sufficient nexus" with the property to support probable

5

cause. *Miknevich*, 638 F.3d at 182 ("fair probability"); *Golson*, 743 F.3d at 54 ("sufficient nexus").

                                        IV

Torres has failed to show that the magistrate lacked substantial basis for issuing the search warrant for 66 Church Street. The District Court therefore did not err when it denied his motion to suppress. Because we hold that the search was supported by probable cause, we do not address whether law enforcement's conduct was also covered by the good faith exception. We will affirm the District Court.